IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| PATRICK R. LYNCH, | CV 22–97–H–DWM |
| Plaintiff, | |
| vs. | OPINION |
| | and ORDER |
| CAPT. BRAGG, | |
| Defendant. | |

Plaintiff Patrick R. Lynch, a state prisoner proceeding pro se, alleges that Bradley Bragg, a Captain at the Lewis and Clark County Detention Center, denied him medical care and was responsible for the loss of personal property in violation of Lynch's constitutional rights.  (*See* Doc. 2.)  Captain Bragg seeks summary judgment on the grounds that Lynch: (1) failed to exhaust his administrative remedies; (2) fails to causally connect Captain Bragg's individual actions to his alleged injuries; (3) fails to show that the medical care he received amounted to deliberate indifference; and (4) has an adequate remedy under state law for his loss of property claim.  (Doc. 37.)  Because Bragg is correct, his motion is granted.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material if it impacts the outcome of the case in accordance with governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  All reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Tatum v. Moody*, 768 F.3d 806, 814 (9th Cir. 2014).  Nonetheless, the nonmoving party must identify, with some reasonable particularity, the evidence that it believes precludes summary judgment. *See Soto v. Sweetman*, 882 F.3d 865, 870 (9th Cir. 2018) (explaining that while pro se parties are exempted from "*strict* compliance with the summary judgment rules," they are "not exempt[ed] . . . from *all* compliance," such as the requirement to identify or submit competent evidence in support of their claims).[1]

## BACKGROUND

The following facts are undisputed unless otherwise noted, (*see* Docs. 40, 42), and viewed in the light most favorable to Lynch, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam).

---

[1] Bragg's motion was accompanied by the requisite *Rand* Notice. (*See* Doc. 41.)

From July 2022 to January 2023, Plaintiff Patrick R. Lynch was an inmate at the Lewis and Clark County Detention Center ("Detention Center") in Helena, Montana.[2] (Doc. 40 at ¶¶ 1, 2.)  On August 16, 2022, Lynch was admitted to St. Peter's Hospital for cirrhosis of the liver, acute hepatic encephalopathy, and a biliary obstruction after he presented to medical staff bleeding from his nose and rectum and slurring his words.  (*See* Doc. 39-2 at 45–50; Doc. 39-3 at 46.)  When he was returned to the Detention Center on August 19, (Doc. 39-3 at 46), he discovered that his cell had been cleaned out and his personal property— specifically a set of lower dentures—was missing and never returned, (*see* Doc. 39-1 at 5, 8, 12, 14).  Lynch subsequently underwent a liver biopsy in October 2022, (*see* Doc. 39-2 at 9), and surgery in December 2022, (*see id.* at 1–2).  He contends that during this timeframe and after, he was denied pain medication and forced to sleep on the floor.  (*See* Doc. 2 at 6.)

On December 27, 2022, Lynch filed the present lawsuit against Captain Bragg, seeking replacement dentures and monetary damages.  (*See generally id.*)  Captain Bragg was ordered to respond, (Doc. 7), and answered on March 24, 2023,

---

[2] Lynch indicates that for at least part of the relevant time period, he was "booked for susespiscion [sic] of D.U.I." and "had not yet been convicted."  (Doc. 42 at 3, 5, 7, 9.)  Assuming Lynch was a pretrial detainee at the time of the alleged misconduct, the conditions of his confinement, specifically his access to adequate medical care, are assessed under the Due Process Clause of the Fourteenth Amendment.  *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018).

(Doc. 13).  On July 28, 2023, Captain Bragg filed a motion for summary judgment. (*See* Docs. 37, 38, 39.)  Lynch responded on August 10, 2023, (Doc. 42), and Captain Bragg replied on August 24, 2023, (Doc. 46).[3]

## ANALYSIS

Captain Bragg argues that he is entitled to summary judgment both procedurally and on the merits.  First, Captain Bragg argues that Lynch failed to grieve or administratively exhaust his claims.  Second, Captain Bragg argues that Lynch's claims fail on the merits because he cannot show that Captain Bragg played an affirmative role in the alleged violative conduct or that he received constitutionally inadequate medical care and he has an independent remedy under state law for his due process property claim.  Ultimately, because Captain Bragg is correct, summary judgment is indeed appropriate as to all of Lynch's claims.

## I.    Exhaustion

Pursuant to the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under . . . [42 U.S.C. §] 1983 . . . or any other federal law[] by a prisoner . . . until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  This means a prisoner must

---

[3] Following Captain Bragg's reply, Lynch filed both a notice indicating he was amenable to settlement, (Doc. 47), and a sur-reply without the Court's permission, (Doc. 50); *see* D. Mont. L.R. 7.1(d)(1)(D) ("No further briefing is permitted without prior leave.").

4

"complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). Exhaustion is mandatory. *Booth v. Churner*, 532 U.S. 731, 741 (2001); *Jones v. Bock*, 549 U.S. 199, 211 (2007). Under the PLRA, prison regulations define the exhaustion requirements. *Jones*, 549 U.S. at 218.

The defendant bears the ultimate burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant initially shows that (1) an available administrative remedy existed and (2) the prisoner failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). Thus, once the defendant has carried his burden, the prisoner must produce evidence demonstrating that "the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (internal citations and quotation marks omitted).

Here, the Detention Center grievance process requires that grievances be submitted through the KIOSK system within 48 hours of the issue being grieved and the process contains four steps: (1) informal investigation, (2) appeal to

Detention Sergeant, (3) appeal to Detention Lieutenant; and (4) appeal to Detention Captain. (Doc. 39-4 at 2.) Captain Bragg argues that Lynch has failed to fully grieve any of his claims through this process. In response, Lynch does not dispute that he did not properly grieve his claims; rather, Lynch argues that the PLRA does not apply to him because he was not yet convicted and that he was not aware of the proper grievance procedure. Lynch concedes, however, that all the KIOSK entries submitted by Captain Bragg, (*see* Doc. 39-1), "are true and correct copies of all communications including grievances and attempted grievances by Patrick Lynch." (Doc. 42 at 12.) Ultimately, Captain Bragg succeeds in showing that two of Lynch's claims—sleeping on the floor and the denial of pain medications—were not properly exhausted and therefore cannot proceed here.

Contrary to Lynch's position, (*see* Doc. 42 at 3), administrative exhaustion under the PLRA extends to all "prisoners," which includes pretrial detainees merely "accused of" a violation of a criminal law. 42 U.S.C. § 1997e(h). Thus, regardless of Lynch's inmate status, he was required to fully exhaust his claims before filing suit. He admits that he failed to do so. (*See* Doc. 42 at 8.) He argues, however, that he never saw the grievance manual and the procedure was never explained to him. While Captain Bragg does not argue that Lynch was provided with a physical copy of the grievance rules and policies, he insists that Lynch was "trained on the use of the KIOSK system and the grievance policy during

orientation to the jail" and was required to acknowledge those rules "the first time he used the KIOSK system," (*see* Doc. 40 at ¶ 7), which Lynch has admitted to using, (*see* Doc. 42 at 11). Indeed, the KIOSK records show that Lynch consistently used the program to lodge complaints. (*See generally* Doc. 39-1.) Nevertheless, those records only show that Lynch knew how to enter a grievance in the KIOSK system, not that he understood or was made aware of all the steps in the process, specifically the appeals process. Captain Bragg fails to provide any evidence as to what the grievance training or KIOSK acknowledgment entailed. For example, it is unclear whether the acknowledgment explicitly stated the four-step appeals process outlined in the "Grievance Procedures" section of the manual. (*See* Doc. 39-4 at 2.)

While Captain Bragg is critical of Lynch's failure to present evidence as to a lack of knowledge, Lynch's KIOSK entries support Lynch's argument that he was not made aware of the complete grievance procedure or how to follow up on an existing complaint. For example, he was told at times to specifically contact medical staff regarding his issue, (*see, e.g.*, Doc. 39-1 at 7), or that what he filed "is not a grievance," and that he should "talk to the officer in [his] pod" or his "post" about the issue, (*id.* at 8, 9, 12, 16). But Captain Bragg's briefing specifically states that "[c]onversations with guards, or even the Lieutenant, do not qualify as a grievance." (*See* Doc. 38 at 6.) And Captain Bragg concedes that

Lynch raised some of his issues, particularly the loss of his dentures, multiple times in the KIOSK system. (*See id.*) A reasonable interpretation of Lynch's conduct is that Lynch did not appreciate the difference between a "follow up" and an "appeal" of an answer he had previously received once it was lodged in the KIOSK system. Captain Bragg has therefore not carried his burden of proving that the Detention Center provided an "available" administrative remedy to the extent Lynch failed to go beyond the first step of presenting a complaint in the KIOSK system. *See Albino*, 747 F.3d at 1177.

That said, Lynch failed to even file a complaint in the KIOSK system as to two of the issues raised here: sleeping on the floor and pain medication. Lynch first claims that upon his return from the hospital in August 2022, he "was placed in the library with no sheets or hygiene and housed for several weeks . . . on the library floor." (Doc. 2 at 5.) In response, Captain Bragg argues that Lynch was placed on a bed on the booking room floor because he was on medical watch, (Doc. 40 at ¶ 38), and even so, Lynch did not grieve the issue at all. Because the latter conclusion is supported by the KIOSK logs, this issue was not even preliminarily exhausted and cannot be pursued here. Likewise, Lynch claims that upon his return from "surgery on his liver," he was denied pain medication. (Doc. 2 at 5–6.) But Lynch did not make a single entry in the KIOSK grievance system regarding pain medication or management. (*See* Doc. 40 at ¶ 25.) This issue is

therefore also unexhausted and cannot proceed.  Accordingly, the only claims that

proceed beyond this stage are Lynch's allegation that he was denied his dentures

and proper and timely medical care and his alleged lost property.

## II.    Merits

Captain Bragg argues that Lynch's remaining claims fail on the merits

because he has not, and cannot, prove a claim based on supervisory liability under

§ 1983 and, even if he could, Lynch's treatment did not rise to the level of

deliberate indifference.  He further argues that there is an independent state remedy

available for Lynch's loss of property claim.  Because Captain Bragg is correct as

to each of these matters, summary judgment is appropriate.

### A.    Supervisory Liability

"Supervisory liability is imposed against a supervisory official in his

individual capacity for his own culpable action or inaction in the training,

supervision, or control of his subordinates, for his acquiescence in the

constitutional deprivations of which the complaint is made, or for conduct that

showed a reckless or callous indifference to the rights of others." *Corales v.

Bennett*, 567 F.3d 554, 570 (9th Cir. 2009) (internal quotation marks omitted).

Consistently, "[i]n a section 1983 claim, a supervisor is liable for the acts of his

subordinates if the supervisor participated in or directed the violations, or knew of

the violations of subordinates and failed to act to prevent them." *Id.* (internal

quotation marks omitted). "The requisite causal connection may be established when an official sets in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict constitutional harms." *Id.* (internal quotation marks omitted).

Here, Lynch does not appear to argue that Captain Bragg was personally involved in any of the alleged misconduct, but rather that he should have either personally intervened or set better standards for the facility to prevent the wrongdoing from occurring. (*See generally* Doc. 50.) As argued by Captain Bragg, none of Lynch's grievances identify Captain Bragg by position or name, (*see* Doc. 39-1), and Lynch fails to connect Captain Bragg to any of the specific care decisions made in this case. Generalized statements regarding the role of a facility supervisor are insufficient to establish supervisory liability under § 1983. *See Thomas v. Swarthout*, 2016 WL 1359934, at *9 (E.D. Cal. Apr. 5, 2016) ("[T]he causal link between . . . [a supervisory] defendant and the claimed constitutional violation must be specifically shown."). And while Lynch appears to be critical of how the grievance system operated under Captain Bragg's leadership, there is no constitutional requirement to that effect as "inmates lack a separate constitutional entitlement to a specific prison grievance procedure." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003).

**B.    Medical Care**

Even if Lynch could show the necessary causal connection to establish

liability, the undisputed factual record shows that the medical care he received was

constitutionally adequate.  A claim for deficient medical care under § 1983 is

assessed under either the Fourteenth Amendment Due Process Clause for pretrial

detainees or the Eighth Amendment for convicted detainees.  *Gordon v. Cnty. of

Orange*, 888 F.3d 1118, 1122–25 (9th Cir. 2018).  Although somewhat different,

both standards require that "the plaintiff must prove more than negligence."  *See

id.* at 1125 (internal quotation marks omitted).  Lynch fails to do so here.

As discussed above, Lynch has two surviving medical care claims, the first

regarding the fact that the Detention Center did not replace his dentures and the

second that he was denied appropriate follow-up care after his liver surgery.

Neither has merit.

As it relates to the delay in receiving replacement his lower dentures, the

record shows that the Detention Center promptly responded to Lynch's grievances

by first attempting to acquire replacement dentures and then explaining to Lynch

that because he was on a Department of Corrections hold, he could only be

approved to "see the denture clinic" once he was transferred to the Department of

Corrections.  (*See* Doc. 40 at ¶¶ 15–16.)  There is nothing in the record to indicate

that the Detention Center had the authority to either approve dentures before such a

transfer or to expedite the process in anyway.  Lynch has not presented any

11

evidence that the facility's conduct was deficient or, more specifically, rose beyond mere negligence. *See Brown v. Carpenter*, 2020 WL 6219787, at \*1 (D. Nev. Oct. 22, 2020) (granting summary judgment for detention facility regarding a "delay in obtaining his dentures" claim where there was no evidence that the defendant was responsible for the delay). Because no trier of fact could reasonably find in favor of Lynch as to this claim, summary judgment is granted in favor of Captain Bragg.

Lynch further alleges that he was "denied basic medical care," which seems to center on his allegation that the Detention Center failed to facilitate follow-up appointments for his liver procedures. (*See* Doc. 2 at 6.) The record does not support such a claim. After Lynch was seen in August 2022, he received further care in September, October, November, and December. And after his December 1 procedure, the treating physician prescribed a follow-up CT scan for three months later. (Doc. 40 at ¶ 27.) On December 6, Lynch sent a message to medical staff "wondering if the [doctor] that did [his] surgery [had] scheduled a follow up appointment" as he thought the doctor had "said something about 15 days." (*Id.* ¶ 28.) On December 19, medical staff responded, consistent with the doctor's recommendation, that "there is not a follow up appointment" based on "the medical notes from [his] procedure," but that they would get him "in for a CT scan in three months to see how it worked." (*Id.* ¶ 29.)

On January 3, 2023, Lynch sent an additional message stating that "[i]f we are going to have a cat scan, we should do it soon." (*Id.* ¶ 30.) Medical informed him that it was scheduled, and he responded that "[t]hat is good cause I've felt terrible." (*Id.* ¶ 31.)

On January 20, 2023, Lynch sent another message to medical, requesting "to receive post surgical discharge plan from my oncology procedure at St. Peter's Hospital. I had my procedure in December and have some concerns why I haven't received follow up." (*Id.* ¶ 32.) He also threatened to reach out to the Board of Nursing. (*Id.*) Staff once again responded that that doctor recommended a three-month follow-up, (*id.* ¶ 33), and brought him to the medical clinic on January 25 to see his medical records, (*id.* ¶ 35). Lynch then stated that "he was satisfied with this response" and "had no complaints." (*Id.* ¶¶ 36–37.)

Based on the foregoing, there is then no evidence that Lynch missed any appointments or was denied recommended treatment. Summary judgment is therefore appropriate on this claim.

## C.    Loss of Property

Finally, Lynch alleges that his bottom dentures and other personal property was lost by the Detention Center during his August 2022 hospital stay. (*See* Doc. 2 at 5.) According to Captain Bragg, this loss occurred when other inmates cleaned out Lynch's cell. (*See* Doc. 40 at ¶ 12.) Prisoners have a protected interest in their

personal property. *Hansen v. May*, 502 F.2d 728, 730 (9th Cir. 1974). An authorized, intentional deprivation of property (one carried out pursuant to established procedures) is actionable under the Due Process Clause. *Hudson v. Palmer*, 468 U.S. 517, 532 n.13 (1984). However, negligent and/or unauthorized intentional deprivations of personal property do not constitute an actionable violation "if a meaningful post-deprivation remedy for the loss is available." *Id.* at 533. Because the record provides no basis for finding that the alleged deprivation of Lynch's personal property was authorized, the Montana Tort Claims Act provides such a remedy for Lynch. *See* Mont. Code Ann. §§ 2–9–101, *et seq.*; *Anderson v. Delten*, 2018 WL 1756592, at *2–3 (D. Mont. Jan. 17, 2018). His claim therefore fails as a matter of law.

## III.    Amendment

In his sur-reply, Lynch argues that he should be given the opportunity to amend his complaint to allege a viable claim. (*See* Doc. 50 at 5–6.) In doing so, Lynch conflates dismissal with summary judgment. While this Court previously determined that Lynch's claims were adequately pled, (*see* Doc. 7), the present order concludes they lack substantive merit. Lynch was given the opportunity to address Captain Bragg's arguments and did so. (*See* Docs. 42, 50.) At this stage of the proceeding, amendment is not appropriate.

CONCLUSION

Based on the foregoing, IT IS ORDERED that Captain Bragg's motion for summary judgment (Doc. 37) is GRANTED.  The Clerk is directed to enter judgment in favor of the defendant and close the case file.

DATED this _20_ day of September, 2023.

16:06 P.M.

Donald W. Molloy, District Judge
United States District Court

15